UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  13-21494-CIV-ALTONAGA

**GMI, LLC**,

            Plaintiff,

vs.

**ASOCIACIÓN DEL FÚTBOL
ARGENTINO**, *et al.*,

            Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Asociación del Fútbol Argentino ("AFA"), IMG Worldwide, Inc. ("IMG"); Fox Sports Net, Inc. ("Fox Sports"); Fox Sports Latin America Ltd. ("Fox Latin"); GOL TV, Inc. ("GOL"); and Republic of Argentina's ("Argentina['s]") (collectively, "Defendants[']") Omnibus Motion to Dismiss the Amended Complaint . . . ("Motion") [ECF No. 98], filed January 31, 2014.  On March 4, 2014, Plaintiff, GMI, LLC ("GMI") filed its Response in Opposition . . . ("Response") [ECF No. 108]. Defendants filed their Omnibus Reply . . . ("Reply") [ECF No. 115] on March 28, 2014.  The Court has carefully reviewed the parties' written submissions and applicable law.

## I.  BACKGROUND

This case involves claims brought by GMI against Defendants in connection with GMI's allegations that "Defendants have unlawfully deprived GMI of its right to collect commissions" it expected to receive as compensation for brokering deals for the purchase of television rights to broadcast AFA soccer matches.  (Amended Complaint ¶ 2 [ECF No. 66]).  GMI is a limited-liability company composed of two members, Alejandro and Gustavo Mascardi, who are

"foreign citizens." (*Id.* ¶ 7)  AFA, the Argentine Football Association, is the "governing body" of soccer in Argentina.  (*Id.* ¶ 8).  IMG is an Ohio corporation with offices in Coral Gables, Florida.  (*See id.* ¶ 9).  Fox Sports is a Delaware corporation with offices in Fort Lauderdale, Florida.  (*See id.* ¶ 10).  Fox Latin is a foreign corporation with offices in Coral Gables, Florida. (*See id.* ¶ 11).  GOL is a Florida corporation.  (*See id.* ¶ 12).  Argentina is a foreign sovereign. (*See id.* ¶ 13).

GMI was approached by AFA in August 2006 to assist AFA with brokering a new deal for AFA's television and media rights.  (*See id.* ¶ 15).  GMI agreed to assist, and, to that end, GMI and AFA executed an agreement ("GMI-AFA Agreement") granting GMI the exclusive right to market and negotiate a deal regarding AFA's media rights.  (*See id.* ¶ 16; Ex. A – Exclusive Authorization ("GMI-AFA Agreement") [ECF No. 66-1]).  The GMI-AFA Agreement states "AFA will reach an agreement with the buyer on the financial compensation due GMI for organizing the transaction, as well as the way in which this will be implemented (i.e., cash, shareholding, etc.)."  (GMI-AFA Agreement; *see also* Am. Compl. ¶ 17).  GMI claims "the industry standard for brokering television and media rights is fifteen (15) percent of the purchase price."  (Am. Compl. ¶ 17).

GMI "initiated a campaign" to broker the AFA deal, formed a team of employees, marketing experts, and other professionals, and met with various "international power brokers" in furtherance of the campaign.  (*Id.* ¶¶ 18–19).  GMI also met with representatives from Fox Sports/Fox Latin[1] and IMG about the potential deal in 2007 and 2008.  (*See id.* ¶¶ 19–20).  GMI alleges neither Fox Sports/Fox Latin nor IMG knew of the opportunity before it was presented by GMI.  (*See id.* ¶ 20).

---

[1]  In the Amended Complaint, GMI notes Fox Sports has asserted Fox Latin was actually the entity involved in the transactions.  Because "it is impossible for GMI to verify" Fox Sports's assertion at this stage, the Amended Complaint treats Fox Sports and Fox Latin together.  (*Id.* 1 n.1).

In 2009, GMI reached out to government officials in Argentina about the potential for Argentina to purchase the media rights to AFA matches.  (*See id.* ¶ 21).  At AFA's behest, GMI arranged meetings with various Argentinian officials, including then-Minister of Justice Anibal Domingo Fernandez and then-Minister of Economy Amado Boudou.  (*See id.* ¶¶ 21–22).  GMI alleges Argentina was not aware of the opportunity to purchase the broadcast rights before it was presented by GMI.  (*See id.* ¶ 21).  In August 2009, AFA and Argentina executed a 10-year partnership agreement ("AFA-Argentina Agreement") for AFA's television rights — without representatives from GMI.  (*See id.* ¶ 23).  The AFA-Argentina Agreement was memorialized in an Argentinian administrative decision, which makes no mention of GMI's involvement.  (*See id.* ¶ 24).

GMI alleges AFA and Argentina then "flipped" AFA's international transmission rights to IMG and Fox Sports/Fox Latin, and AFA and Argentina are sharing the monies being paid for the international transmission rights.  (*Id.* ¶ 25).  GMI believes AFA and Argentina "benefit[ted] from the interest already created through GMI's negotiations with IMG and [Fox Sports/Fox Latin]."  (*Id.* (alterations added)).  GMI further alleges GOL acquired transmission rights for which GOL is making payments to Argentina and AFA.  (*See id.* ¶ 27).  Defendants have failed to give GMI any commission payments.  (*See id.* ¶¶ 27–28).

In its Amended Complaint, GMI asserts claims against AFA for breach of contract (Count I), breach of fiduciary duty (Count II), breach of the duties of good faith and fair dealing (Count III), unjust enrichment (Count IV); and against Argentina for tortious interference (Count XI) and unjust enrichment (Count XII).  (*See generally id.*).  GMI seeks a declaratory judgment

that it is entitled to compensation for its services from AFA (Count V), IMG (Count VII), Fox Sports/Fox Latin (Count IX), GOL (Count X), and Argentina (Count XIII).[2]  (*See generally id.*).

In its initial Complaint [ECF No. 1], GMI alleged the Court had subject matter jurisdiction pursuant to 28 U.S.C. section 1332 because of the diversity of citizenship of the parties, and pursuant to 28 U.S.C. section 1330, as Argentina is a foreign state.  (*See id.* ¶ 5).  Following the filing of several motions to dismiss (s*ee* [ECF Nos. 32, 35, 36, 37, and 39]), the parties appeared for a status conference on December 6, 2013 to address the Court's concern over the timing of jurisdictional discovery and a schedule for briefing on the motions to dismiss.  At that conference, the Court pointed out the Complaint failed to identify the citizenship of the members of GMI, a limited liability company, and hence it was not clear diversity of citizenship provided a basis for federal subject matter jurisdiction.  GMI indicated its intention to amend the Complaint and inquire into the citizenship of GMI's members.   GMI thereafter filed the Amended Complaint, which has as its sole basis of federal subject matter jurisdiction section 1330, with supplemental jurisdiction alleged to exist over the remaining Defendants pursuant to 28 U.S.C. section 1367.   (*See* Am. Compl. ¶ 5).[3]

Defendants move to dismiss all counts on jurisdictional grounds and for failure to state a claim, as well as for the lack of personal jurisdiction over AFA and Argentina, and *forum non conveniens* as to AFA.  (*See generally* Mot.).  Because Article III jurisdiction must be reached as a threshold matter, and the Court cannot "resolve contested questions of law when its jurisdiction

_____

[2]  GMI's Amended Complaint asserted claims for tortious interference against IMG (Count VI), tortious interference against Fox Sports/Fox Latin (Count VIII), and civil conspiracy against AFA, IMG, and Fox Sports/Fox Latin (Count XIV).  GMI voluntarily dismissed those counts on March 4, 2014.  (*See* Plaintiff's Notice of Dropping Counts VI, VIII, and XIV of the Amended Complaint Without Prejudice ("Notice of Dropping Counts") [ECF No. 107]).

[3]  GMI now states the citizenship of GMI's members "is irrelevant for jurisdictional purposes as the Plaintiff is no longer asserting diversity jurisdiction as a basis for pursuing this matter before the Court[]." (*Id.* ¶ 7).

is in doubt," the Court first addresses Defendants' arguments regarding subject matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).  And because the Court finds it lacks subject matter jurisdiction over this case, it does not reach the remaining arguments for dismissal.

## II.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter.  *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts . . . .")).  "If the court determines at any time that it lacks subject–matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3).

Attacks on subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be either facial or factual.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  Like a Rule 12(b)(6) motion, "[a] 'facial attack' on the complaint requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true . . . ."  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (alterations added) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  Factual attacks differ because they "challenge[] the existence of subject matter jurisdiction in fact . . . and matters outside of the pleadings, such as testimony and affidavits, are considered."  *Id.* (alterations added).  Factual attacks also differ from facial attacks because "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Defendants' Motion presents a facial attack.  (*See generally* Mot.).

### III.  ANALYSIS

GMI asserts various claims against the foreign Defendants, AFA and Argentina, and seeks only declaratory judgments against the remaining Defendants, IMG, GOL, and Fox Sports/Fox Latin.  (*See generally* Am. Compl.; Notice of Dropping Counts).  As stated, GMI alleges the Court has jurisdiction over this action pursuant to 28 U.S.C. section 1330, which confers subject matter jurisdiction onto federal courts in cases involving a foreign state under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. section 1620 *et seq.*, and section 1367, which authorizes federal courts to exercise supplemental jurisdiction over related claims — here, those asserted against Defendants AFA, IMG, GOL, and Fox Sports/Fox Latin.  (*See* Am. Compl. ¶ 5).  Defendants argue the Court lacks subject matter jurisdiction because Argentina is immune from suit under the FSIA, and GMI has not established an exception to the FSIA applies.  (*See* Mot. 23–33).

 "To establish subject matter jurisdiction under the FSIA, a plaintiff must overcome the presumption that the foreign state is immune from suit in the United States'[s] courts." *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000) (alteration added; citations omitted).  "In order to overcome the presumption of immunity, a plaintiff must prove that the conduct which forms the basis of its complaint falls within one of the statutorily defined exceptions." *Id.* (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610–11 (1992); 28 U.S.C. § 1604).

Under the FSIA, foreign states are immune from suit in the United States unless their alleged activity falls within the exceptions enumerated in 28 U.S.C. sections 1605 to 1607. *See*

CASE NO.  13-21494-CIV-ALTONAGA

28 U.S.C. § 1604.  "The most significant of the FSIA's exceptions . . . is the 'commercial'

exception of [section] 1605(a)(2) . . . ."  *Weltover*, 504 U.S. at 611 (alterations added).  Section

1605(a)(2) provides a foreign state shall not be immune in any case:

> in which the action is based upon a commercial activity carried on in the United
> States by the foreign state; or upon an act performed in the United States in
> connection with a commercial activity of the foreign state elsewhere; or upon an
> act outside the territory of the United States in connection with a commercial
> activity of the foreign state elsewhere and that act causes a direct effect in the
> United States.

28 U.S.C. § 1605(a)(2).

GMI relies on the third clause of section 1605(a)(2) to assert Argentina is subject to the

Court's jurisdiction under the "commercial activity" exception.  (*See* Resp. 5–6).  To fall under

this exception, GMI must establish the case is "(1) based upon an act outside the territory of the

Untied States; (2) that was taken in connection with a commercial activity of Argentina outside

this country; and (3) that caused a direct effect in the United States."  *Weltover*, 504 U.S. at 611

(internal quotation marks, alterations, and footnote call number omitted).  Defendants argue GMI

has not established the third element — that Argentina's alleged activity caused a direct effect in

the United States.  (*See* Mot. 29–33).  But according to GMI, this case falls within the FSIA's

commercial activity exception because GMI would have ultimately requested its commission

payment be made in the United States, thereby constituting a direct effect in the United States.[4]

(*See* Resp. 6 (citing Am. Compl. ¶ 126); *see also* Am. Compl. ¶ 6).

---

[4]  GMI also seems to argue Argentina's alleged contacts with IMG, GOL, and Fox Sports/Fox Latin
provide an additional basis for finding the commercial activity exception to the FSIA is satisfied.  (*See*
Resp. 8–9).  That argument, however, ultimately depends on the commercial activity having an effect in
the United States, which GMI predicates exclusively on "[t]he loss of millions of dollars by GMI — due
and payable in the United States."  (Resp. 9 (alteration added)).  GMI's arguments, then, can be distilled
into one claim: GMI believes Argentina's conduct had a direct effect in the United States because GMI
*would have* directed its commission be paid in the United States.  (*See id.* 8–9).

CASE NO.  13-21494-CIV-ALTONAGA

In support of its position, GMI cites to *Hanil Bank v. PT. Bank Negara Indonesia, (Persero)*, 148 F.3d 127, 132 (2d Cir. 1998).  There, the Second Circuit found the direct effect exception to the FSIA satisfied where the plaintiff designated the United States as the place for payment.  (*See* Resp. 9 (citing *Hanil Bank*, 148 F.3d at 132)).  Even though the foreign sovereign in *Hanil Bank* protested the exercise of jurisdiction over it on the ground it "never expressly agreed to New York as the place of payment," the court found the contract at issue:

> authorized the negotiating bank to designate the place of payment.  In so doing, BNI [the foreign sovereign] consented to pay the relevant amount at a location chosen by plaintiff Hanil, wherever that might be.  Accordingly, when Hanil specified New York in its correspondence, BNI had already impliedly agreed to New York as the place of payment.

*Hanil Bank*, 148 F.3d at 132 (alteration added).  The court concluded the foreign sovereign's conduct caused a direct effect in the United States, since "'[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming.'"  *Id.* (alteration in original) (quoting *Weltover*, 504 U.S. at 619).

This case is distinguishable from *Hanil Bank* on two grounds.  First, GMI has not alleged it ever actually designated the United States as the place of payment — only that it had intended to do so.  (*See* Am. Compl. ¶ 6).  Second, GMI has failed to demonstrate such a unilateral designation, even if articulated, would have bound the purchaser of AFA's media rights, such that "[m]oney that was supposed to have been delivered to a [U.S.] bank for deposit was not forthcoming."  *Weltover*, 504 U.S. at 619 (alterations added).

To elaborate, GMI claims it would have directed its commission payment to be made in the United States, alleging "payment was due (and/or would have been dictated to be due by the Plaintiff) in Miami-Dade County, Florida."  (Am. Compl. ¶ 6).  GMI does not, however, allege it ever articulated a request to be paid in the United States.  (*See generally id.*).  Nothing in the text

of the GMI-AFA Agreement provided by GMI indicates the United States was designated as the place of payment (*see* GMI-AFA Agreement), and GMI does not point to any language in the GMI-AFA Agreement stating GMI was to be paid in the United States (*see generally id.*).

Even though the Amended Complaint contains no factual allegation indicating GMI ever designated the United States as the place of payment (*see generally* Am. Compl.), GMI maintains it has established an exception to the FSIA applies because its commissions "would have been due and payable in the United States" (Resp. 8).   Taking all of GMI's allegations as true establishes only that GMI *intended* to designate the United States as the place of payment — not that it ever actually did.

In *Agrocomplect AD v. Republic of Iraq*, 304 F. App'x 872 (D.C. Cir. 2008), the District of Columbia Circuit dismissed a Bulgarian corporation's suit against the Republic of Iraq where the plaintiff failed to show "payments under its contract with Iraq were supposed to pass through an American bank, as *Weltover* requires."  *Id.* at 873.  The *Agrocomplect AD* court relied in part on its prior holding in *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1146–47 (D.C. Cir. 1994), where the court declined to find subject matter jurisdiction existed since "[n]either New York nor any other United States location was designated as the 'place of performance' where money was 'supposed' to have been paid by Rafidain or to Goodman."  *Goodman Holdings*, 26 F.3d at 1146 (alteration added).

The opinions in *Hanil Bank*, *Agrocomplect AD*, and *Goodman Holdings* all recognize a direct effect in the United States is established where the United States is designated as the place of payment.  That is not the case here, where GMI never identified its place of payment as the United States.  GMI has failed to provide any support for its assertion a direct effect in the

United States is established where the plaintiff never specified payment be made the United States, but now alleges it "*would have*" done so.  (*Id.* ¶ 6 (emphasis added)).

Even if GMI had, at some point, indicated its desire to be paid in the United States, such allegation alone would fail to establish a contractual obligation on the purchaser's part to make payment in the United States.  In *Hanil Bank*, the plaintiff benefitted from the ability to unilaterally designate a place of payment per the contract at issue and create a contractual obligation via its designation.  *Hanil Bank*, 148 F.3d at 132.  No similar agreement exists here. Under the terms of the GMI-AFA Agreement, GMI expected to broker a deal for AFA's media rights, following which AFA — not GMI — would arrange for the amount and form of payment due to GMI.  (*See* GMI-AFA Agreement ("The AFA will reach an agreement with the buyer on the financial compensation due GMI for organizing the transaction, as well as the way in which this will be implemented (i.e., cash, shareholding, etc.).")).  GMI fails to allege the GMI-AFA Agreement authorized GMI to unilaterally select a place for payment, nor does the GMI-AMA Agreement indicate GMI had such an entitlement.  (*See generally* Am. Compl.; GMI-AFA Agreement).

Ultimately, GMI fails to allege any facts to support a conclusion it was due to be paid in the United States.  The only allegation GMI makes to support subject matter jurisdiction over Argentina is that GMI would have asked for its commission to be paid in the United States.  (*See* Am. Compl. ¶ 6).  Because GMI's allegations fail to establish the purchaser of AFA's media rights would have been under any obligation to direct a payment into the United States, GMI has failed to demonstrate its payment was due here and that Argentina's alleged interference caused a direct effect in the United States.  (*See generally* Am. Compl.).

The "direct effect" question asks: "'was the effect sufficiently 'direct' and sufficiently 'in the United States' that Congress would have wanted an American court to hear the case?'" *Guevara v. Republic of Peru*, 608 F.3d 1297, 1309 (11th Cir. 2010) (alteration added; citations omitted).  Based on GMI's allegations, the Court finds the answer is a clear "no."  GMI, itself comprised of foreign citizens, has sued a foreign sovereign and a foreign association based on a foreign contract.  The only nexus this action has to the United States is GMI's allegation it would have arranged to be paid its commission in the United States.  GMI cannot now claim it would have requested payment be made here in order to haul a foreign sovereign into a U.S. court under the commercial activity exception to the FSIA.

Indeed, if such an attenuated connection could serve to establish an exception to the FSIA, plaintiffs would be able to plead around foreign sovereign immunity simply by claiming they *intended* to request payment be made in the United States.  *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction . . . may be dismissed for want of subject-matter jurisdiction if it is . . . made solely for the purpose of obtaining jurisdiction . . . ." (alterations added; internal quotation marks and citations omitted)).  Such a conclusion would implicate serious due process concerns, enabling plaintiffs to haul foreign sovereigns into federal court where those sovereigns could not "reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  GMI's allegations, taken as true, do not establish an exception to the FSIA.

GMI's only basis for asserting federal subject matter jurisdiction over the entire action is the FSIA, and the Court has determined the commercial activity exception to the FSIA does not apply.  There are two independent reasons to dismiss the remaining Defendants.

CASE NO.  13-21494-CIV-ALTONAGA

First, the remaining Defendants must be dismissed pursuant to *Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008).  Under *Pimentel*, "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Id.* at 867.  *Pimentel* mandates dismissal of the entire action where a party to a suit possesses sovereign immunity and is a required party under Federal Rule of Civil Procedure 19.  *Id.* at 862–67; *see also TJGEM LLC v. Republic of Ghana*, -- F. Supp. 2d --, No. 13-382 (BAH), 2013 WL 6857988, at *8 (D.D.C. Dec. 31, 2013) (applying *Pimentel*).  Rule 19 requires joinder of a party who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i) (alteration added).  Argentina's absence would impair its ability to protect its interests in this suit, and allowing the action to proceed in its absence would fail to "give full effect to sovereign immunity." *Pimentel*, 553 U.S. at 865.  Therefore, dismissal of this action in its entirety is required under *Pimentel*.

Second, GMI alleges jurisdiction over the remaining Defendants based on 28 U.S.C. section 1367.  That statute authorizes courts to "decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).  The Court is dismissing the claims over which it has original jurisdiction — those against Argentina, a foreign sovereign — and declines to exercise supplemental jurisdiction over the remaining claims, most of which are asserted against AFA, a foreign defendant, and the rest of which seek only declaratory judgments.

12

CASE NO.  13-21494-CIV-ALTONAGA

"[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh*, 546 U.S. at 514 (alteration added; citation omitted).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 98]** is **GRANTED**. This case is **DISMISSED**.  The Clerk is directed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of June, 2014.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

13